UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

ANGELA C.,[1]

    *Plaintiff,*

v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant.*

No. 24-cv-10429-PGL

---

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE COMMISSIONER'S DECISION AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE COMMISSIONER'S DECISION

LEVENSON, U.S.M.J.

### INTRODUCTION

Plaintiff Angela C. ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits.[2]

---

[1] Plaintiff's name is partially redacted in accordance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] When Plaintiff brought this suit, the Commissioner was Martin O'Malley. In February 2025, Leland Dudek was designated by President Trump as the Acting Commissioner. Pursuant to Fed. R. Civ. P. 25(d), Acting Commissioner Dudek is substituted as the defendant in this action.

Before the Court are the parties' cross motions for judgment. Plaintiff seeks an order reversing the Commissioner's decision (Docket No. 15), whereas the Commissioner asks the Court to affirm it (Docket No. 17).

Plaintiff challenges the residual functional capacity ("RFC") finding made by the administrative law judge ("ALJ"), which underlies the Commissioner's determination that Plaintiff was not disabled within the meaning of the Act. Specifically, Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence and that the ALJ erred by: (1) failing to adequately account for Plaintiff's limitations in concentration, persistence, or pace; (2) failing to incorporate a physician's finding that Plaintiff can only have "superficial" interactions in the workplace; and (3) incorrectly writing in his decision that there is no evidence in the record of Plaintiff taking medication for her mental health.

For the reasons discussed below, I conclude that: (1) the ALJ's RFC determination— particularly as it relates to Plaintiff's limitations in concentration, persistence, or pace—is supported by substantial evidence; (2) the ALJ adequately considered the opinion evidence regarding Plaintiff's ability to interact in the workplace; and (3) any misstatement regarding Plaintiff's medication treatment was immaterial. Based on these conclusions, I must deny Plaintiff's motion (Docket No. 15) and grant the Commissioner's motion (Docket No. 17).

## I.    Background

### A.    Procedural Posture

Plaintiff filed an application for SSI benefits on October 11, 2021,[3] alleging that she was disabled as of November 30, 2018. R. 29.[4] Plaintiff subsequently amended her claimed disability onset date to October 11, 2021, *i.e.*, the date of her application. R. 58.

Plaintiff's application was initially denied on January 11, 2022, R. 29; *see* R. 168–77, 194–98, and upon reconsideration on September 9, 2022, R. 29; *see* R. 178–88, 202–04. Plaintiff requested a hearing before an ALJ, which was conducted telephonically (with Plaintiff's agreement) on March 6, 2023. *See* R. 54–91 (Hearing Transcript), 263–64 (COVID-19 Remote Hearing Agreement Form), 265–69 (Notice of Hearing).

On April 4, 2023, the ALJ issued his decision, finding that Plaintiff was not disabled and denying her claim. *See* R. 26–48 (ALJ's Decision). Plaintiff sought review by the Social Security Administration's Appeals Council, which denied her request for review on January 22, 2024, *see* R. 1–4, rendering the ALJ's decision final, *see* 20 C.F.R. § 404.981. Plaintiff now seeks further review by bringing suit in this Court.

### B.    Relevant Facts

Although Plaintiff has alleged both physical and mental impairments, Plaintiff's contentions in this appeal relate solely to her mental impairments. Accordingly, in reviewing the factual background, I focus on those impairments and do not discuss her physical impairments.

---

[3] Although the difference of a day is immaterial, I note that certain documents suggest the application was filed on October 12, 2021. *See, e.g.*, R. 289 ("On October 12, 2021, you applied for Supplemental Security Income . . . .").

[4] Citations to the record ("R.") refer to the Administrative Record of Social Security Proceedings filed by the Acting Commissioner. *See generally* Docket Nos. 12–12-9. Citations use the record's pagination, as shown on the lower right-hand corner of each page.

      1.     *Plaintiff's Mental Impairments*

      a.     Plaintiff's Testimony

During the hearing before the ALJ, Plaintiff testified that she suffers from anxiety, PTSD, and depression. R. 72–73. When asked about her symptoms, Plaintiff explained that she experiences nervousness, heart palpitations, tightness in her chest, shortness of breath, dizziness, and loss of concentration and that, at night, she gets anxious and has flashbacks and "a lot of nightmares." R. 72–73, 82. Plaintiff testified that she "can't be around a lot of people," that she "get[s] sad" and "want[s] to be alone," and that she experiences panic attacks approximately once a month, which last about half an hour. R. 72–73. Plaintiff also stated that she has trichotillomania, which has led to "bald spots all over [her] scalp." R. 72.

Plaintiff testified that her short-term memory is "not so good," but her long-term memory is "okay." R. 73–74. She stated that she does not have problems "understanding instructions or directions generally" but that she "sometimes" has problems making decisions, particularly when she is "very anxious." R. 74. Although she testified that she does not have problems getting along with other people, Plaintiff explained that she avoids social situations "[a] lot of times," stating that she does not "really associate with too many [people]" or "really go out." R. 74–75.

With respect to treatment, Plaintiff testified that she goes to counseling once a week and that she sees a psychiatrist who prescribes her anxiety medication, which she has found helpful. R. 73; *see* R. 81 (explaining when she takes her anxiety medication). She testified that she has never been hospitalized for mental health, nor has she attended a partial hospitalization program. R. 73.

      b.    Medical Record Evidence

As the thousand-plus-page record demonstrates, Plaintiff has been receiving treatment for anxiety, depression, and/or PTSD for some time. Although I do not summarize each and every

visit Plaintiff had with a medical provider, I endeavor to provide an overview of Plaintiff's mental impairments and the treatment she has received.

The ALJ found—and the record illustrates—that Plaintiff suffers from anxiety, depression, and PTSD and that she has attempted to treat these conditions through counseling and psychiatric treatment. *See* R. 38 ("Aside from physical conditions, the claimant has anxiety, depression, and PTSD, and the medical evidence shows a history of psychiatric symptoms."), 40 ("The medical evidence also shows ongoing counseling and psychiatric treatment.").

The record reflects that Plaintiff has attended remote counseling sessions through Arbour Counseling Services ("Arbour Counseling") for several years. *See* R. 319–20 (indicating that Plaintiff's first visit at Arbour Counseling was in July 2019), 937–38 (form completed by a nurse practitioner at Arbour Counseling stating that she has been treating Plaintiff since July 2019);[5] *see also* R. 674–82 (treatment notes from approximately January 2021 through December 2021), 812–45 (treatment notes from approximately January 2022 through October 2022), 976–87 (treatment notes from approximately November 2022 through February 2023).

Although the handwritten treatment notes can be difficult to read, they reflect that Plaintiff has frequently reported a depressed and/or anxious mood, albeit with some periods of improvement. *See, e.g.*, R. 814 (September 1, 2022, treatment notes reflecting "[a]nxious" mood), 976 (January 5, 2023, treatment notes reflecting "[d]epressed" mood); *see also, e.g.*, R. 986 (November 2, 2022, treatment notes stating: "'No depression or anxiety' reported by pt."). The treatment notes further reflect that Plaintiff's symptoms were at times exacerbated by external stressors. *See, e.g.*, R. 979 (December 1, 2022, treatment notes indicating increased

---

[5] The record also includes a document captioned "Arbour Counseling Services Comprehensive Clinical Assessment" dated June 2019. R. 703–11.

stress due to financial struggles), 978 (December 8, 2022, treatment notes indicating increased stress due to Christmas holiday).

As for psychiatric treatment, the record reflects that Plaintiff has, at various points, been prescribed different medications for anxiety and depression. *See, e.g.*, R. 406 (noting on a Social Security Administration form that Plaintiff was prescribed buspirone for her anxiety and sertraline for her anxiety and depression), 526 (noting in a visit summary Plaintiff's "history of depression and anxiety" and stating that "she has been prescribed lorazepam" and "has been started on Zoloft"), 585 (suggesting that Plaintiff was previously prescribed clonazepam for her anxiety and depression), 682 (noting that Vistaril has helped with Plaintiff's anxiety).

The record also contains a Social Security Administration Function Report, which features Plaintiff's self-description of the ways her impairments limit her daily activities.[6] *See* R. 346–53. In the Function Report, Plaintiff stated that she is "super anxious," that she does not handle stress "well at all," that changes in routine take her "a lot of getting used to," that she pulls out strands of her hair one-by-one, and that her anxiety affects her sleep. R. 347, 352. She further indicated that her impairments affect her memory, concentration, and ability to complete tasks, but not her ability to understand or follow instructions. R. 351. Plaintiff acknowledged that she is able to read and watch television "[n]ormally." R. 350. Although Plaintiff described herself as a "home body" with a "[f]ear of large crowds," she checked a box indicating that she has no issues "getting along with family, friends, neighbors, or others." R. 350, 352; *see* R. 351

---

[6] It is unclear when Plaintiff completed this Function Report, as she inadvertently included her date of birth rather than the date of completion on the form. *See* R. 353. According to the ALJ, Plaintiff submitted the Function Report on December 22, 2021. R. 40.

(indicating that her impairments do not affect her ability to get along with others and that she gets along with authority figures "very well").[7]

    c. Opinion Evidence

  Although multiple medical professionals opined about various aspects of Plaintiff's condition, only three opined as to Plaintiff's mental impairments: Steven Fischer, PhD; Therese Harris, PhD; and Josephine Thuo, NP.

  Dr. Fischer, a state agency consultant at the initial level, and Dr. Harris, a state agency consultant at the reconsideration level, determined—on January 3, 2022, and August 16, 2022, respectively—that Plaintiff had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. R. 172 (Dr. Fischer), 182–83 (Dr. Harris).

  With respect to the "concentration, persistence, or pace" area of functioning, both Dr. Fischer and Dr. Harris opined that Plaintiff was "[n]ot [s]ignificantly [l]imited" in her ability to "carry out very short and simple instructions," "carry out detailed instructions," "sustain an ordinary routine without special supervision," "work in coordination with or in proximity to others without being distracted by them," and "make simple work-related decisions." R. 175 (Dr. Fischer), 186 (Dr. Harris). Dr. Fischer and Dr. Harris opined, however, that Plaintiff was "[m]oderately [l]imited" in her ability to "maintain attention and concentration for extended periods"; "perform activities within a schedule, maintain regular attendance, and be punctual

---

[7] It appears that Plaintiff completed an additional Function Report on July 2, 2022. *See* R. 365–72. In that Function Report, Plaintiff similarly reported that she has "severe anxiety" and PTSD, as well as that she suffers from panic attacks and lack of sleep. R. 365–66. Plaintiff again indicated that her impairments affect her memory, concentration, and ability to complete tasks, but not her ability to understand or follow instructions. R. 370.

within customary tolerances"; and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 175 (Dr. Fischer), 186 (Dr. Harris). When asked to explain in narrative form Plaintiff's "sustained concentration and persistence capacities and/or limitations," Dr. Fischer wrote that Plaintiff "can carry out simple and some detailed instructions 2/8/40 with limited persistence and pace as well as occasional difficulties with attention, depending on pain." R. 175. Dr. Harris, for her part, wrote that Plaintiff "remains able to maintain focus, pace and persistence for simple tasks for 2-hour periods over an 8-hr workday within a normal 40-hour work schedule." R. 186.

With respect to the "interacting with others" area of functioning, Dr. Fischer and Dr. Harris opined that, although Plaintiff has social interaction limitations, she is "[n]ot [s]ignificantly [l]imited" in her ability to "ask simple questions or request assistance," "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." R. 175 (Dr. Fischer), 186 (Dr. Harris). That said, both physicians found that she was "[m]oderately [l]imited" in her "ability to interact appropriately with the general public." R. 175 (Dr. Fischer), 186 (Dr. Harris). When asked to explain Plaintiff's social interaction limitations in narrative form, Dr. Fischer wrote that Plaintiff "has some social avoidance but can briefly interact around work related issues." R. 175. Dr. Harris found that Plaintiff "remains able to interact in a limited capacity with the public, manage appropriate superficial interpersonal interactions in the workplace, and accept reasonable supervision." R. 186.

Nurse Practitioner Josephine Thuo of Arbour Counseling, who apparently began seeing Plaintiff around July 2019, completed two forms on January 19, 2023: Listing 12.04 Depressive, Bipolar and Related Disorders Questionnaire (R. 937–38) and Listing 12.06 Anxiety and Obsessive-Compulsive Disorders Questionnaire (R. 939–40). In these forms, Nurse Practitioner Thuo summarized the symptoms of Plaintiff's depressive and anxiety disorders and opined that Plaintiff has marked limitations in understanding, remembering, or applying information; marked limitations in interacting with others; marked limitations in concentration, persistence, or maintaining pace; and marked limitations in adapting or managing oneself. R. 937–40. Although the form asked Nurse Practitioner Thuo to circle the degree of the claimant's limitation and to provide a narrative description, there is no such description; there are just markings to indicate the reported degrees of limitation. *See id.*

### 2.    *Plaintiff's Work Experience*

Plaintiff worked on-and-off as a personal care attendant/home health aide from approximately 2007 through 2018. *See* R. 338. During the hearing before the ALJ, Plaintiff testified that, as a personal care attendant/home health aide, she was on her feet most of the time, and she estimated that she did not lift more than ten pounds. *See* R. 64–65 (explaining that, although she did not lift her clients, she assisted them in the shower).

During the hearing, the ALJ heard testimony from a vocational expert ("VE"). *See* R. 85–91. The VE categorized Plaintiff's most recent job as a "home attendant" (DOT code 354.377-014), a job with a medium exertion level and a Specific Vocational Preparation ("SVP") of 3.[8] R.

---

[8] "Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Lab., 2 Dictionary of Occupational Titles 1009 app. C (4th ed., rev. 1991), 1991 WL 688702. The scale runs from one

*Footnote continues on following page.*

85. The VE testified, however, that, according to Plaintiff's description, she performed the job at a light—rather than medium—level.[9] *Id.*

## II.    Legal Standard

### A.    *Standard of Review*

Section 205(g) of the Act provides that an applicant for benefits may seek review from a district court of the Commissioner's decision on their application. 42 U.S.C. § 405(g). The court may affirm, modify, or reverse the final decision of the Commissioner,[10] and reversal may include remanding the case for a rehearing. *Id.*

Reversal is warranted if an incorrect legal standard was used or if the final decision is not supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). A reviewing court examines questions of law de novo, *Seavey*, 276 F.3d at 9, but the court must defer to the ALJ's factual findings as being supported by substantial evidence "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

As the First Circuit has noted, the substantial evidence standard is "more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to

---

(for skills that can be learned with a "[s]hort demonstration only") to nine (for skills that require "[o]ver 10 years" to develop). *Id.* An SVP of three means that a job requires one to three months of training, which may include on-the-job training. *Id.*

[9] The ALJ's decision states that Plaintiff performed her past relevant work as a home attendant at a heavy level. R. 47. This appears to be erroneous, although it is not material to the present case.

[10] In this case, and in general, the decision of the Commissioner is a decision by an ALJ, as the Commissioner's designee.

meet the benchmark, a preponderance of evidence is not." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Lab.*, 336 F.3d 51, 56 (1st Cir. 2003)). Although the standard of review is deferential, an ALJ's findings of facts are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Sacilowski v. Saul*, 959 F.3d 431, 437 (1st Cir. 2020) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).

Importantly, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). It is, after all, the role of the ALJ—not the court—to find facts, determine credibility, and weigh conflicting evidence. *See Seavey*, 276 F.3d at 10 ("[T]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ."); *Evangelista v. Sec'y of Health & Hum. Servs.*, 826 F.2d 136, 141 (1st Cir. 1987) ("Conflicts in the evidence are, assuredly, for the Secretary—rather than the courts—to resolve."). "Judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

**B.    *Standard for Entitlement to Disability Benefits***

To qualify for SSI through disability, claimants must demonstrate that they are "disabled" within the meaning of the Act. *See* 42 U.S.C § 1382c(a)(3) (defining "disability" in the context of SSI). "Disability" is defined, in relevant part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). The impairment must be severe

enough to prevent a claimant from performing not only work done previously, but "any other kind of substantial gainful work which exists in the national economy." *See id.* § 1382c(a)(3)(B).

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled, and thus entitled to benefits. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); *see also* 20 C.F.R. § 416.920(a)(4) (setting forth the five steps applicable to SSI). "[A]ll five steps are not applied to every applicant, as the determination may be concluded at any step along the process." *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). The five steps are as follows:

1. If "the applicant is engaged in substantial gainful work activity," the applicant is found not to be disabled, and the application is denied. *Seavey*, 276 F.3d at 5.

2. If the applicant does not have a "severe medically determinable physical or mental impairment that [is expected to result in death or has lasted or is expected to last at least twelve continuous months], or a combination of impairments that is severe and meets the duration requirement," then the applicant is found not to be disabled, and the application is denied. 20 C.F.R. § 416.920(a)(4)(ii); *see id.* § 416.909 (setting the twelve-month duration requirement).

3. If the applicant's "impairment meets the conditions for one of the 'listed' impairments in the Social Security regulations," then the applicant is found to be disabled, and the application is granted. *Seavey*, 276 F.3d at 5.

4. "[I]f the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work," then the applicant is found not to be disabled, and the application is denied. *Id.*

5. "[I]f the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work," then the applicant is found to be disabled, and the application is granted. *Id.*

At the first four steps, "[t]he applicant has the burden of production and proof." *Freeman*, 274 F.3d at 608. "If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." *Id.*

### III.    The ALJ's Findings

In considering Plaintiff's claim, the ALJ proceeded through the five-step inquiry to determine whether Plaintiff is entitled to disability benefits.

#### A.    *Step 1*

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 11, 2021, Plaintiff's amended disability onset date (and the date Plaintiff filed her application for SSI benefits). R. 31; *see* R. 58 (requesting to amend Plaintiff's claimed onset date). As such, the ALJ proceeded to Step 2.

#### B.    *Step 2*

At Step 2, the ALJ determined that Plaintiff has several severe impairments, including "degenerative disc disease of the cervical and lumbar spine; right knee osteoarthritis; right shoulder tendonitis; obesity; urge incontinence; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and rheumatoid arthritis." R. 31. The ALJ determined that Plaintiff's other impairments—including epilepsy, carpal tunnel syndrome, and obstructive sleep apnea—were non-severe. *See* R. 32–33 (listing Plaintiff's non-severe impairments). Because Plaintiff does not challenge the ALJ's Step 2 findings—that is, she does not contend that the ALJ should have found certain impairments severe rather than non-severe— there is no need to summarize the ALJ's rationale for these findings.

#### C.    *Step 3*

At Step 3, the ALJ considered Plaintiff's physical and mental impairments and concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 33. Although Plaintiff does not challenge the ALJ's Step 3 findings, she relies on certain of these findings in challenging the ALJ's determination of her RFC. As such, it

makes sense to review the Step 3 findings that relate to Plaintiff's contention that the ALJ failed to adequately consider the extent of her mental impairments in determining her RFC.

As noted above, a claimant will be found disabled if her "impairment meets the conditions for one of the 'listed' impairments in the Social Security regulations." *Seavey*, 276 F.3d at 5. The "listed" impairments are set forth in Appendix 1 to 20 C.F.R. Part 404, Subpart P, with listed mental disorders appearing at section 12.00. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00. Here, the ALJ considered whether Plaintiff's mental impairments met or medically equaled the criteria of the following listings: 12.04 ("Depressive, bipolar and related disorders"); 12.06 ("Anxiety and obsessive-compulsive disorders"); and 12.15 ("Trauma- and stressor-related disorders"). *See* R. 35; 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06, 12.15. Each of these listings includes three paragraphs, designated "A," "B," and "C." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A2. To fall within any of these listings, a claimant's "mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." *Id.* Broadly speaking, for each listing, paragraph A pertains to requirements for medical documentation of symptoms; paragraph B pertains to limitations on identified areas of mental functioning; and paragraph C pertains to "serious and persistent mental disorders" as reflected in a history of treatment and minimal capacity to adapt to changes or demands in daily life. *See id.*

The ALJ began by considering whether the paragraph B criteria were met. *See* R. 35–36. To satisfy the paragraph B criteria, Plaintiff's "mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning." R. 35; *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A2b. "An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis," whereas a "marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a

sustained basis." R. 35; *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A2b. The paragraph B broad "areas of mental functioning" include:

1. Understand, remember, or apply information;

2. Interact with others;

3. Concentrate, persist, or maintain pace; and

4. Adapt or manage oneself.

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04B, 12.06B, 12.15B.

The ALJ analyzed Plaintiff's limitations in these four areas and found that Plaintiff has a (1) mild limitation in understanding, remembering, or applying information; (2) moderate limitation in interacting with others; (3) moderate limitation in concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting or managing oneself. R. 35–36. Because Plaintiff's mental impairments did not cause one "extreme" limitation or at least two "marked" limitations, the ALJ found that the paragraph B criteria were not met. R. 36.

Plaintiff's present arguments rely, in part, on the ALJ's findings about Plaintiff's limitations with respect to concentrating, persisting, or maintaining pace. As such, it makes sense to review the ALJ's findings as to that area of functioning. Those findings were as follows:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant testified that she suffers depressed moods and becomes sad and loses interest in most things. In the function report, she described difficulty with concentration and focus, and reported that she does not complete tasks that she starts; however, she reported that she is able to pay attention well for 20 to 30 minutes at once, and reads or watches TV for enjoyment. Across her longitudinal treatment, mental status examinations were normal for attention and concentration, and showed logical, goal-oriented thought processes. Similarly, clinical presentations were unremarkable, and the claimant did not require redirection. Despite reported improvement with medication, she still complained of worsened anxiety with stress and external factors. In the function reports, she reported that she could handle her finances, use a computer, operate a vehicle, and prepare cooked meals.

*Id.* (citations omitted).

Because a claimant can meet the relevant listings by satisfying either the requirements of paragraphs A and B or paragraphs A and C, the ALJ went on to consider whether the paragraph C criteria were satisfied. *See* R. 37. "To satisfy the paragraph C criteria, [the claimant's] mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A2 (citation omitted). The C1 criterion are "satisfied when the evidence shows that [the claimant] rel[ies], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [the claimant's] mental disorder." *Id.* § 12.00G2. The C2 criterion is "satisfied when the evidence shows that, despite [the claimant's] diminished symptoms and signs, [the claimant] ha[s] achieved only marginal adjustment," meaning the claimant's "adaptation to the requirements of daily life is fragile" or the claimant has "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." *Id.* The ALJ concluded that the paragraph C criteria were not satisfied because Plaintiff's mental impairments were not "serious and persistent," as the "[t]reatment notes [did] not demonstrate treatment efficacy constituting 'marginal adjustment' as defined by 12.00(G)(2)(c)" and medical evidence did not "show two years of structured treatment as defined by 12.00(G)(2)(b)." R. 37.

Based on the finding that neither the paragraph B nor paragraph C criteria were met, the ALJ determined that Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15, and he continued to the next step. *See id.*

### D.    *"Step 3.5"*[11]

To complete Steps 4 and 5—where an ALJ considers whether a claimant's RFC is such that he or she can still perform past relevant work or other paid work—the ALJ must determine the claimant's RFC (that is, "the most [claimants] can still do despite [their] limitations"). *See* 20 C.F.R. § 416.945(a)(1).

As such, before I can address Step 4, I must consider the ALJ's determination of Plaintiff's RFC. Here, the ALJ determined that Plaintiff was able (*i.e.*, had the RFC) to:

> [P]erform light work as defined in 20 CFR 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, as well as sit for 6 hours and stand or walk for 4 hours in an 8-hour day. She can occasionally reach overhead bilaterally, and can occasionally push and pull with her right lower extremity. She cannot climb ladders, rope or scaffolding. The claimant can occasionally kneel, stoop, crouch, crawl and climb stairs and ramps. She can occasionally balance on narrow, unsteady and erratic surfaces. She must avoid concentrated exposure to extreme cold, extreme heat, unprotected heights, dangerous machinery, and fumes, odors, dusts, gases and poor ventilation. She can perform simple, routine and repetitive tasks over an eight-hour workday within a normal break schedule. The claimant can occasionally interact with supervisors and co-workers. She can interact with the public on an occasional basis, provided interaction requires no more than exchange of non-personal work-related information or handoff of products or materials. She requires proximate access to a restroom.

R. 37.

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because it inadequately accounts for her mental impairments. As such, I focus on the ALJ's

---

[11] The five-step litany is indelibly etched into the regulations and case law. But the nomenclature is misleading; often in social security appeals, including in this one, the key finding is the determination of a claimant's RFC, which is not one of the five identified steps. When a claim is not resolved at Steps 1, 2, or 3, the ALJ must assess the claimant's RFC, in light of the claimant's medical condition as a whole, in order to proceed to Steps 4 and 5. Thus, the RFC determination is a critical step—often *the* critical step— in the analysis of any disability claim. *See Pepper v. Comm'r of Soc. Sec. Admin.*, No. 22-1381, 2023 WL 3073532, at *1 (4th Cir. Apr. 25, 2023) (per curiam) ("The RFC is a key part of the five-step process by which an ALJ determines disability.").

rationale for concluding that Plaintiff "can perform simple, routine and repetitive tasks over an eight-hour workday within a normal break schedule"; that Plaintiff "can occasionally interact with supervisors and co-workers"; and that Plaintiff "can interact with the public on an occasional basis, provided interaction requires no more than exchange of non-personal work-related information or handoff of products or materials." *Id.*

Generally, in making the RFC determination, ALJs follow a two-step process to evaluate an individual's claims about her symptoms and their impact on her ability to work. *See* 20 C.F.R. § 416.929. The first step requires "objective medical evidence from an acceptable medical source" to demonstrate the existence of an impairment(s) that could reasonably be expected to produce the symptoms alleged. *Id.* The second step requires a broader inquiry, looking beyond the objective medical evidence and requiring the ALJ to "carefully consider any other information" an individual may submit regarding her symptoms, including "statements about the intensity and persistence of . . . pain." *Id.*

In this case, the ALJ concluded that Plaintiff's symptoms are real, but not as debilitating as she claims. In the ALJ's words, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 43.

In reaching this conclusion, the ALJ discussed at some length the evidence about Plaintiff's mental impairments. With respect to Plaintiff's testimony, the ALJ noted that Plaintiff testified that she has depression, anxiety, and PTSD and that she "has symptoms of flashbacks, nightmares, and anxiety episodes with dizziness, shortness of breath, and increased heartrate." R. 38. The ALJ noted that Plaintiff also reported suffering from "depressed moods," "los[ing]

interest in most things," and "poor short term memory." *Id.* With respect to treatment, the ALJ

noted that Plaintiff testified that she "sees a psychiatrist for medications" and "meets with [a

therapist] every week over the phone." *Id.*

Turning to the written evidence, the ALJ observed that Plaintiff's medical records reflect

that she was receiving "ongoing counseling and psychiatric treatment," and he reviewed what he

considered Plaintiff's most "notable visits." R. 40; *see* R. 40–42 (describing these "notable

visits"). For these visits, the ALJ summarized the highs and lows of Plaintiff's reported

symptoms, the impact of external stressors on those symptoms, Plaintiff's ability (or lack

thereof) to engage in daily activities (such as babysitting her granddaughter), and the medications

that Plaintiff was prescribed. *See* R. 40–42.

The ALJ explained that he had considered various medical opinions in reaching his RFC

determination. R. 45. He referred in detail to seven prior medical opinions, of which three bear

on Plaintiff's mental impairments. The ALJ summarized those three opinions as follows:

> The undersigned finds persuasive the opinions of Therese Harris, Ph.D. and Steven
> Fischer, Ph.D., the state evaluators of the claimant's mental impairments in the
> prior decisions. Both Drs. Harris and Fischer opined as to moderate degrees of
> limitation in interacting with others and in concentration, persistence, and
> maintaining pace, with mild degrees in the other broad areas of functioning
> ("paragraph B" criteria). They opined as to a mental residual functional capacity
> for simple instructions, with some detailed instructions, and occasional interactions
> with others but for brief, superficial interactions with the public. These opinions are
> supported by the medical evidence of the claimant's symptoms and treatment
> course, contrasted to management with routine treatment and the generally benign
> mental status exams and clinical presentations. Therefore, the opinions of Dr.
> Harris and Dr. Fischer are consistent with the record, and persuasive in supporting
> this decision.
>
> . . .
>
> The undersigned finds unpersuasive the opinion of Josephine Thuo, NP on in [sic]
> the treating source statement on January 19, 2023. Nurse Thuo opined that the
> claimant has marked limitations in each of the broad areas of functioning
> ("paragraph B" criteria). This opinion is also not supportive [sic] by the medical

evidence, as mental status examinations were generally benign for abnormalities suggestive of marked limitations, nor did the claimant complain of symptoms suggesting such. Similarly, the admitted activities of daily living, as detailed above, support less than marked limitations. As such, Nurse Thuo's opinion is inconsistent with the record.

R. 46 (citations omitted).

Finally, in explaining how he determined Plaintiff's RFC with respect to her mental impairments, the ALJ wrote:

> [T]he medical evidence . . . supports fewer limitations than alleged. The record shows that the claimant has anxiety, depression, and PTSD, but her treatment was limited to counseling and medication management. During counseling sessions, she consistently exhibited an anxious mood, but was otherwise normal on mental status exam. Further, she generally reported managed anxiety and depression, and her complaints focused on external factors, like financial, family, childcare, or relationship issues, as well as increased symptoms from related stress. Even so, she generally described taking care of her grandchildren on a regular basis. While there were periods when she was not on medication, the claimant tended to treat with prescribed medication; nevertheless, she consistently reported managed and stable anxiety symptoms, and consistently denied depressive symptoms, despite her medication status. Mental status examinations from psychiatric treatment were consistently benign, as were her clinical presentations. In the function reports, she denied any problems interacting with others, but reported staying home more due to chronic pain. She reported that she could pay attention for 20-30 minutes at once, and reported good ability with instructions, but sometimes needs them repeated or reread.

> Therefore, the record supports mental limitations based on her symptoms, but less than alleged considering management with conservative, routine treatment, as well as due to benign mental status exams and subjective statements regarding admitted abilities and activities of daily living. As such, the undersigned finds that the record supports a mental residual functional capacity for simple, routine, and repetitive tasks, with occasional interacting with others, but only superficial with the public, given her traumatic symptoms and potential triggers.

R. 45 (citations omitted).

### E.    Step 4

At Step 4, the ALJ determined that Plaintiff is unable to perform her past relevant work as a home attendant, either as actually or generally performed. R. 47. In so finding, the ALJ

relied on the VE's testimony that an individual with Plaintiff's RFC would be unable to serve as a home attendant. *See id.* Specifically, during the hearing, the ALJ asked the VE:

> Q. . . . My first hypothetical, assume an individual of the claimant's age, education and work background was able to lift and carry 20 pounds occasionally, 10 pounds frequently, as well as sit for 6 hours and stand or walk for 4 hours in an 8-hour day. She can occasionally reach overhead bilaterally and can occasionally push and pull with her right lower extremity. . . . She cannot climb ladders, ropes or scaffolding. She can occasionally kneel, stoop, crouch, crawl and climb stairs and ramps, can occasionally balance on narrow, unsteady and erratic surfaces. She must avoid concentrated exposure to extreme cold, extreme heat, unprotected heights, dangerous machinery and fumes, odors, dust, gases and poor ventilation. She can perform simple, routine, repetitive tasks over an eight-hour workday within a normal break schedule. She can occasionally interact with supervisors and coworkers. She can interact with the public on an occasional basis provided the interaction requires no more than exchange in non-personal work-related information we get off of products and materials. She requires proximate access to a restroom. Could this individual perform [Plaintiff's] past relevant work?

R. 85–87. The VE responded that this individual could not perform Plaintiff's past relevant work as a home attendant. R. 87.

### F.    Step 5

Having concluded that Plaintiff could not perform her past relevant work as a home attendant, the ALJ considered, at Step 5, whether there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *See* R. 47–48. To do so, the ALJ asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]." R. 48; *see* R. 87 (VE's testimony). The VE testified that such an individual would be able to work in other jobs available in the national economy, such as:

- Routing Clerk (DOT# 222.687-022, light, SVP 2) with approximately 117,000 in the national economy.

- Marker (DOT# 209.587-034, light, SVP 2) with approximately 176,000 in the national economy.

- Mail Sorter (DOT# [209.687-026], light, SVP 2) with approximately 11,000 in the national economy.[12]

R. 48; *see* R. 87.

During questioning from the ALJ, the VE confirmed that the Routing Clerk, Marker, and Mail Sorter jobs would be available for an individual who could "understand, remember[,] and carry out simple instructions." R. 88. As such, the ALJ concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and found her not disabled as a result. R. 48.

## IV.    Analysis

As previewed above, Plaintiff argues that the RFC set forth by the ALJ is not supported by substantial evidence. Plaintiff contends that the ALJ: (1) inadequately accounted for Plaintiff's limitations in concentration, persistence, or pace; (2) failed to incorporate a physician's finding that Plaintiff can only have "superficial" interactions in the workplace; and (3) incorrectly wrote in his decision that there is no evidence in the record of Plaintiff taking medication for her mental health impairments. I address each of these arguments in turn to explain my conclusion that the RFC is supported by substantial evidence.

### A.    The ALJ Adequately Accounted for Plaintiff's Limitations in Concentration, Persistence, or Pace.

Plaintiff argues that "[t]he ALJ's decision in this case is not supported by substantial evidence because both Drs. Fischer and Harris opined the Plaintiff has limitations in the ability to

---

[12] The VE testified, and the ALJ ultimately found, that Plaintiff could work as a mail sorter. *See* R. 48 (ALJ's finding), 87 (VE's testimony). But the two provided different DOT codes. *Compare* R. 48 ("Mail Sorter (DOT# 096.870-026, light, SVP 2)"), *with* R. 87 ("mail sorter, DOT code 209.687-026, light, SVP 2"). Presumably, both the VE and the ALJ intended to reference the "Mail Clerk" position (identified by DOT code 209.687-026), which has "Mail Sorter" as an alternate title. *See* U.S. Dep't of Lab., 1 Dictionary of Occupational Titles 181 (4th ed., rev. 1991), 1991 WL 671813.

concentrate, persist and maintain pace, yet the RFC formulated by the ALJ does not include such limitations." Docket No. 15-3, at 13 (citations omitted). Phrased in this manner, there is a suggestion that the ALJ somehow disregarded the opinions of Dr. Fischer and Dr. Harris, which would indeed be a serious error. But that is not really Plaintiff's argument; rather, Plaintiff advances a somewhat strained contention that the ALJ erred by failing to read the doctors' reports in the manner that Plaintiff suggests the ALJ should have read them.

It is true that both Dr. Fischer and Dr. Harris opined that Plaintiff had moderate limitations in concentration, persistence, and pace. *See* R. 172 (Dr. Fischer), 182 (Dr. Harris). But they also spelled out how those limitations impacted Plaintiff's ability to work. When asked to "[e]xplain in narrative form [Plaintiff's] sustained concentration and persistence capacities and/or limitations," Dr. Fischer stated that Plaintiff "can carry out simple and some detailed instructions 2/8/40 with limited persistence and pace as well as occasional difficulties with attention, depending on pain." R. 175. Dr. Harris, for her part, explained that, "[w]ith the above-indicated difficulties, [Plaintiff] remains able to maintain focus, pace and persistence for simple tasks for 2-hour periods over an 8-hr workday within a normal 40-hour work schedule." R. 186.

Thus, both Dr. Fischer and Dr. Harris opined that, notwithstanding Plaintiff's difficulties concentrating, persisting, or maintaining pace, she could still complete simple, routine, and repetitive tasks. *See* R. 175, 186. The doctors' explicit opinions directly support the ALJ's determination that Plaintiff had the RFC to "perform simple, routine and repetitive tasks over an eight-hour workday within a normal break schedule."[13] *See* R. 37.

---

[13] Plaintiff also argues that "[t]he ALJ's failure to adequately consider Plaintiff's limited persistence and occasional difficulties with attention is . . . not harmless considering the testimony of the vocational expert who testified that off task behavior exceeding 10 percent of the workday would not be tolerated." Docket No. 15-3, at 15. Because the Court finds that the ALJ adequately

*Footnote continues on following page.*

In her brief to this Court, Plaintiff focuses on the second half of Dr. Fischer's narrative explanation as support for Plaintiff's contention that the ALJ's RFC determination is flawed, at least insofar as it relates to Plaintiff's limitations in concentrating, persisting, or maintaining pace. Plaintiff emphasizes that Dr. Fischer opined that Plaintiff "can carry out simple and some detailed instructions 2/8/40 *with limited persistence and pace as well as occasional difficulties with attention, depending on pain*." Docket No. 15-3, at 14 (quoting R. 175). Relying on this added emphasis, Plaintiff argues that Dr. Fischer's opinion should be read as saying that Plaintiff *might* have been able to "carry out simple and some detailed instructions 2/8/40," *but that she cannot* because she has "limited persistence and pace as well as occasional difficulties with attention." *See id.* (quoting R. 175). In effect, Plaintiff urges that the words that she has emphasized should be read as modifying Dr. Fischer's assessment of Plaintiff's work abilities. *See id.* Under this reading, Dr. Fischer's reference to Plaintiff's "limited persistence and pace as well as occasional difficulties with attention" would imply additional—and unspecified— restrictions, beyond his opinion that Plaintiff's abilities were limited to "carry[ing] out simple and some detailed instructions." *See* R. 175.

Plaintiff's reading of Dr. Fischer's opinion is unpersuasive. To read Dr. Fischer's opinion as Plaintiff suggests would require the Court to accept that Dr. Fischer determined that Plaintiff's work capacity was more limited than what he had indicated when he noted that she could "carry out simple and some detailed instructions." Put another way, Plaintiff asks the Court to find that—even though Dr. Fischer was specifically directed to "[e]xplain in narrative form [Plaintiff's] sustained concentration and persistence . . . limitations, " he neglected even to

---

considered Plaintiff's concentration, persistence, or pace limitations in determining Plaintiff's RFC (in other words, that the ALJ did not err in this respect), there is no need for the Court to consider whether the claimed error would have been harmless.

mention *what* those additional limitations might be. Improbable on its face, such a reading is particularly problematic when one considers that the role of state evaluators like Dr. Fischer is to opine on claimants' functional limitations. The more sensible reading of Dr. Fischer's opinion is, as the Commissioner suggests (*see* Docket No. 18, at 7–8), that due to Plaintiff's "limited persistence and pace," and her "occasional difficulties with attention," she is only able to "carry out simple and some detailed instructions 2/8/40."[14] *See* R. 175. In sum, the ALJ's determination that Plaintiff had the RFC to "perform simple, routine and repetitive tasks over an eight-hour workday within a normal break schedule" is supported by substantial evidence. *See* R. 37.

Plaintiff also argues—albeit somewhat in passing—that Dr. Harris' opinion is internally inconsistent and that the ALJ erred by failing to reconcile this inconsistency. *See* Docket No. 15-3, at 14. But Plaintiff's contention on this score appears to rest on a misreading of the record. Plaintiff attributes two (purportedly inconsistent) opinions to Dr. Harris when the first of these, it appears, is actually from Dr. Fischer.

Plaintiff rests her contention on the following portion of the Disability Determination Explanation at the reconsideration level:

> Explain in narrative form the sustained concentration and persistence capacities and/or limitations.
> Cl can carry out simple and some detailed instructions 2/8/40 with limited persistence and pace as well as occasional difficulties with attention, depending on pain
> --
> recon:
>
> With the above-indicated difficulties, the cl remains able to maintain focus, pace and persistence for simple tasks for 2-hour periods over an 8-hr workday within a normal 40-hour work schedule.

R. 186. Viewing this excerpt in isolation, one can see how Plaintiff might have attributed both quoted opinions to the same doctor (Dr. Harris, who conducted the psych review at the reconsideration level). But the first statement ("Cl can carry out simple and some detailed

---

[14] The ALJ seems to have read Dr. Fischer's narrative explanation the same way: "[Dr. Fischer] opined as to a mental [RFC] for simple instructions, with some detailed instructions[] . . . ." R. 46.

instructions 2/840 with limited persistence and pace as well as occasional difficulties with

attention, depending on pain") is plainly a quotation from the opinion of Dr. Fischer at the initial

level.[15] The second statement, which follows the word "recon," reflects the opinion of Dr. Harris

at the *recon*sideration level. *See* R. 186. Presumably, Dr. Fischer's opinion at the initial level was

simply reiterated at the reconsideration level for ease of review.

   To be sure, Plaintiff's brief could be read to suggest that, even though the first opinion

initially belonged to Dr. Fischer, it was *adopted* by Dr. Harris. *See* Docket No. 15-3, at 5–6.

Plaintiff relies on the fact that Dr. Harris' opinion references "above-indicated difficulties" and

claims that those difficulties are the "difficulties" referenced in Dr. Fischer's opinion. *See id.*

Plaintiff seems to argue that, by referring to the "difficulties" identified by Dr. Fischer, Dr.

Harris essentially adopted his opinion. *See id.*

---

[15] The passage in question is, in fact, a word-for-word copy of the opinion that Dr. Fischer offered
in the Disability Determination Explanation at the initial level. *See* R. 175.

Although Plaintiff's interpretation is plausible, it seems equally likely that Dr. Harris was referring to her own "ratings"—which are themselves listed above her opinion:

| Sustained Concentration and Persistence Limitation | Rating |
|---|---|
| The ability to carry out very short and simple instructions | Not Significantly Limited |
| The ability to carry out detailed instructions | Not Significantly Limited |
| The ability to maintain attention and concentration for extended periods | Moderately Limited |
| The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances | Moderately Limited |
| The ability to sustain an ordinary routine without special supervision | Not Significantly Limited |
| The ability to work in coordination with or in proximity to others without being distracted by them | Not Significantly Limited |
| The ability to make simple work-related decisions | Not Significantly Limited |
| The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods | Moderately Limited |

Explain in narrative form the sustained concentration and persistence capacities and/or limitations.
**Cl can carry out simple and some detailed instructions 2/8/40 with limited persistence and pace as well as occasional difficulties with attention, depending on pain**
**--**
**recon:**

**With the above-indicated difficulties, the cl remains able to maintain focus, pace and persistence for simple tasks for 2-hour periods over an 8-hr workday within a normal 40-hour work schedule.**

R. 186.

Ultimately, it does not much matter how one parses the reference to "above-indicated difficulties." Whether Dr. Harris was adopting Dr. Fischer's opinion or simply referring to her own ratings, there is no material inconsistency between the two doctors' opinions.[16] They used

---

[16] Indeed, Dr. Harris' notes on reconsideration state:

> Ongoing MH issues alleged on recon. *This consultant's review of evidence available at the time of initial psych review generally supports findings of severity and functional limitations described on initial review.* Additional psych evidence received on recon does not support any worsening of MH sxs. Updated provider notes indicate anxiety is controlled and cl denies depression. Totality of evidence supports current limitations due to MH sxs as no more severe than as noted on MRFC.

R. 183 (emphasis added).

27

slightly different words, but both found that Plaintiff's limitations in concentrating, persisting, or maintaining pace meant she could only perform simple, routine, and repetitive tasks.

In short, Plaintiff's contention that the ALJ overlooked a purported inconsistency in the doctors' opinions—and thereby erred by relying on those opinions in his RFC determination—rests on an unpersuasive reinterpretation of those opinions.

It also bears noting that the ALJ's determination of Plaintiff's RFC based on the physicians' opinions is consistent with the governing case law. There is no categorical rule in the First Circuit that a limitation to unskilled or simple, routine work is per se inadequate to account for moderate limitations in concentration, persistence, and pace. *See Le v. Colvin*, No. 15-cv-30157-KAR, 2016 WL 7104835, at *11 (D. Mass. Dec. 5, 2016) ("Courts of the First Circuit have recognized that an RFC . . . , which specifically limits the claimant to work that involves remembering simple instructions, like unskilled work, adequately addresses memory and concentration deficits." (citation omitted)). Accordingly, numerous sessions of this Court have found that RFCs that limited a claimant to unskilled or simple, routine work were supported by substantial evidence—even when the claimants had moderate limitations in concentration, persistence, and pace—so long as the medical opinions in the record supported such a finding. *See, e.g.*, *Maldonado v. Berryhill*, No. 18-11255-ADB, 2019 WL 4921538, at *29 (D. Mass. Sept. 4, 2019) (finding that "the ALJ adequately accounted for plaintiff's moderate difficulties in concentration, persistence, and pace by relying on the opinions of the consultative examiners and other medical sources who translated those limitations into specific, work-related abilities"), *report and recommendation adopted sub nom. Maldonado v. Saul*, 2019 WL 4686705 (D. Mass. Sept. 26, 2019); *Pressley v. Berryhill*, No. 16-40050-TSH, 2017 WL 5760915, at *18–19 (D. Mass. Sept. 8, 2017) (rejecting the claimant's argument that the ALJ failed to account for

moderate limitations in concentration, persistence, and pace when he limited the claimant to

"unskilled work with only simple work-related decisions" based on a state agency psychologist's

determination that even with such limitations, the claimant "could perform simple routine tasks

at an average pace over a regular full time routine"); *Spalke v. Berryhill*, No. 16-10856-TSH,

2016 WL 10720160, at *10 (D. Mass. May 10, 2016) ("When an acceptable medical source

provides an opinion that despite moderate limitations in concentration, persistence, or pace the

claimant is able to do unskilled work or simple routine work, no further restriction in [RFC] is

necessary." (quoting *Mudgett v. Colvin*, No. 14-cv-143, 2014 WL 6977863, at *3 (D.N.H. Dec.

9, 2014))); *Sokolovskaya v. Colvin*, 187 F. Supp. 3d 324, 337 (D. Mass. 2016) (finding the

plaintiff's argument that "the ALJ's mental RFC failed to account for her limitations in

concentration, persistence and pace" to be "unavailing" because "the ALJ gave great weight to

the opinions of [two doctors], both of whom opined that [the p]laintiff was able to maintain

attention, pace and focus on simple tasks for two hour periods during the work day").

> ### B.     Even Assuming the ALJ Erred by Using the Term "Occasional" Rather than "Superficial" in Plaintiff's RFC, any such Error Would Be Harmless.

Plaintiff's next argument is that the RFC is not supported by substantial evidence because

the ALJ failed to include the limitation, recommended by Dr. Harris, that Plaintiff only have

"superficial" contact with her coworkers. *See* Docket No. 15-3, at 15–17. The RFC explicitly

states that Plaintiff can "*occasionally* interact with supervisors and co-workers," R. 37 (emphasis

added), but it does not parrot the word "superficial."

Arguing that the ALJ erred in this respect, Plaintiff contends that "the terms 'occasional'

and 'superficial' are not interchangeable." Docket No. 15-3, at 16. Plaintiff cites various

unpublished, out-of-district cases for the general proposition that "a limitation to *occasional*

interactions[] does not adequately account for the need to have contact which is *superficial*." *See*

*id.* (first citing *Eden v. Comm'r of Soc. Sec.*, No. 18-cv-0076, 2019 WL 7666532, at *2 (N.D. Iowa June 6, 2019), *report and recommendation adopted sub nom. Eden v. Saul*, 2019 WL 5260476 (N.D. Iowa Oct. 17, 2019); then citing *Lindsey v. Comm'r of Soc. Sec.*, No. 18-cv-18, 2018 WL 6257432, at *2 (S.D. Ohio Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019); and then citing *Hurley v. Berryhill*, No. 17-cv-421, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)).

The Commissioner, for his part, argues that the RFC finding that Plaintiff could "occasionally" interact with coworkers sufficiently accounts for Dr. Harris' opinion that Plaintiff could have "superficial" workplace interactions for two reasons. *See* Docket No. 18, at 9–12. First, the Commissioner argues that:

> Dr. Harris' observation that Plaintiff could have "appropriate superficial interpersonal interactions in the workplace" must be read in context with her other findings, which indicate that Plaintiff was moderately limited in her ability to deal with the public but had *no* significant limitations in her ability to ask simple questions, request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers, and maintain appropriate behavior and grooming in the workplace.

*Id.* at 9. Second, the Commissioner points to "a growing body of authority criticizing [the] cases [Plaintiff cites] and soundly rejecting Plaintiff's push for a precise correlation between the RFC assessment and the medical opinions deemed most persuasive." *Id.*

Notably, the Commissioner contends that, *even if* the ALJ erred by failing to limit Plaintiff's RFC to "superficial" workplace interactions, the error was harmless, because the jobs that the ALJ identified as being within Plaintiff's abilities—routing clerk, marker, and mail sorter—require minimal human interaction. *Id.* at 11–12.

There is indeed a body of case law from district courts within the Sixth, Seventh, and Eighth Circuits, which Plaintiff cites, holding that "superficial" and "occasional" have distinct meanings. *See* Docket No. 15-3, at 16; *see also Sara R. v. Kijakazi*, No. 22-cv-1271, 2023 WL

4564421, at *6 (D. Minn. June 28, 2023) (citing cases), *report and recommendation adopted*,

2023 WL 4561312 (D. Minn. July 17, 2023). Those courts have explained the distinction as

follows: "'Occasional contact' goes to the quantity of time spent with the individuals, whereas

'superficial contact' goes to the quality of the interactions." *Eden*, 2019 WL 7666532, at *2

(quoting *Wartak v. Colvin*, No. 14-cv-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016));

*see also Sara R.*, 2023 WL 4564421, at *6 ("[E]ven a job that requires only occasional

interaction could require an employee to engage in prolonged or meaningful conversations

during those few occasions." (quoting *Sanders v. Astrue*, No. 11-cv-1356, 2012 WL 1657922, at

*12 (D. Minn. Apr. 17, 2012), *report and recommendation adopted as modified*, 2012 WL

1658988 (D. Minn. May 11, 2012))). On this basis, when an ALJ fails to explain why a claimant

has been limited to "occasional" rather than "superficial" interactions (or vice versa), these

courts have ordered remand. *See, e.g.*, *Lindsey*, 2018 WL 6257432, at *4 (concluding that "the

absence of any explanation requires remand" where "the ALJ failed to adequately explain why

he limited Plaintiff to '*occasional* interaction with others' instead of '*superficial* contact with the

public, coworkers, or supervisors'"); *Hurley*, 2018 WL 4214523, at *4 (remanding the case

where there was "no explanation as to why the ALJ accepted the limitation of 'occasional

interactions' but not 'superficial interactions' from the psychologists' opinions").

    As the Commissioner points out (*see* Docket No. 18, at 9–11), more recent decisions

have rejected this somewhat rigid distinction between "superficial" and "occasional." *See*

*Sanscrainte v. Comm'r of Soc. Sec*, No. 23-cv-1073, 2024 WL 3466273, at *7 n.2 (W.D. Mich.

July 19, 2024) (referencing "a substantial body of decisions from the Southern District of Ohio

holding that the term 'superficial' has a separate meaning from the term 'occasional' in

vocational parlance," but noting that "[m]ore recent decisions have rejected this judicially-

crafted distinction . . . , finding it at odds with the Sixth Circuit's unpublished decision in *Reeves v. Commissioner of Social Security*, 618 F. App'x 267, 275 (6th Cir. 2015)"); *see also, e.g.*, *Nicholas F. v. King*, No. 22-cv-2574, 2025 WL 318751, at *5 (N.D. Ill. Jan. 28, 2025) ("[T]he court is persuaded by decisions finding a correlation between contact that is superficial and contact that is infrequent, and others holding that conflating the two dimensions of interaction typically is not reversible error."); *Stephen D. v. Comm'r of Soc. Sec*, 734 F. Supp 3d 729, 738 (S.D. Ohio 2024) ("[T]he Court . . . concludes that 'occasionally' does not create a sufficient conflict with 'superficially' when applied to 'interactions,' such that the ALJ would be required to explain that change."); *Reynolds v. Kijakazi*, 25 F.4th 470, 474–75 (7th Cir. 2022) (suggesting, without deciding, that "the distinction . . . between 'occasional' and 'superficial' may not matter for purposes of the RFC analysis").

Importantly, neither party has pointed the Court to any First Circuit case that has grappled with whether "superficial" and "occasional" may be used interchangeably in describing a claimant's RFC, nor has the Court identified any such case. In any event, the Court need not decide the issue because, even if the Court were persuaded that "superficial" and "occasional" have distinct meanings in the context of an RFC determination, the Court agrees with the Commissioner that, to the extent the ALJ might have erred in using "occasional" rather than "superficial," any such error would be harmless, as the jobs the ALJ determined that Plaintiff could perform require minimal or no social interaction. *See Sanscrainte*, 2024 WL 3466273, at *7 n.2 ("[E]ven if Plaintiff had made the argument and persuaded the Court that the term 'superficial' has an accepted vocational meaning, any error would be harmless as the three positions from the Dictionary of Occupational Titles the VE identified have a social interaction code of 8, meaning that they require minimal or no social interaction."); *Bryant v. Kijakazi*, No.

22-cv-02727, 2023 WL 4982261, at *4 (W.D. Tenn. Aug. 3, 2023) ("Here, the VE suggested representative occupations of 'checker for bakery products,' 'cleaner industrial,' and 'hand packer,' all of which have social interaction codes of 8. Common sense and case law suggests that any error made by the ALJ in not explaining the lack of a superficial interaction restriction is accounted for by listing representative jobs that only require superficial interaction. This is harmless error." (footnote and citation omitted)); *Melinda R. v. Comm'r of Soc. Sec.*, No. 23-cv-1090, 2024 WL 193655, at *13–14 (S.D. Ohio Jan. 18, 2024) (concluding that "the adoption of a 'superficial' limitation would not have altered the decision" where the ALJ "determined that Plaintiff could perform work in two positions (warehouse checker and marker) for which the DOT rates the level of social interaction as a 'People level 8'"), *report and recommendation adopted in part*, 2024 WL 1268249 (S.D. Ohio Mar. 26, 2024).

Here, the VE testified—and the ALJ ultimately decided—that Plaintiff is capable of performing the following jobs: Routing Clerk (DOT 222.6**8**7-022), Marker (DOT 209.5**8**7-034), and Mail Sorter (DOT# 209.6**8**7-026). R. 48, 87. As reflected in the emphasized digits, the DOT code for each of these three jobs includes a people rating of "8." What that rating means is that these occupations require the "lowest level of human interaction in the range of occupations." *Lagace v. Saul*, 537 F. Supp. 3d 141, 154 (D. Mass. 2021). "At this ranking, the individual takes instructions '[a]ttending to the work assignment instructions or orders of supervisor' with '[n]o immediate response required unless clarification of instructions or orders is needed.'" *Id.* at 154 n.2 (alterations in original) (quoting U.S. Dep't of Lab., 2 Dictionary of Occupational Titles 1006 app. B (4th ed., rev. 1991), 1991 WL 688701).[17]

---

[17] These authorities contradict Plaintiff's unsupported assertion that "[i]t is likely the jobs identified by the VE, such as Routing Clerk, Marker, and Mail Sorter, require more than superficial contact with co-workers." *See* Docket No. 15-3, at 17.

Courts, including within this Circuit, have repeatedly held that "unskilled occupations with a social interaction level of '8' can be performed even by individuals with a limitation to 'superficial' interactions." *Melinda R.*, 2024 WL 193655, at *13 (citing cases); *see, e.g.*, *Fredette v. Berryhill*, No. 17-cv-672, 2019 WL 121249, at *7 (D.N.H. Jan. 7, 2019) ("Numerous courts have found jobs with [the lowest-possible rating for social interaction] appropriate for claimants with RFC specifying limited coworker contact because such jobs involve workplace interactions that are only 'occasional,' 'brief' and 'superficial.'"); *Connor v. Colvin*, No. 13-cv-00219, 2014 WL 3533466, at *4 (D. Me. July 16, 2014) ("This court has construed [the people rating of 8] as consistent with limitations to occasional, brief, and superficial contact with coworkers and supervisors and occasional interaction with the public." (citations omitted)); *cf. Lagace*, 537 F. Supp. 3d at 153–54 (finding that, even if the ALJ erred in failing to further limit the claimant's ability to work in "close proximity" with others, the error was harmless because "each of the jobs . . . had a people rating of 8" and therefore "were not likely to require that the plaintiff work in close proximity to others").

In short, even if the ALJ had limited Plaintiff's RFC to "superficial" contact with her coworkers—as Plaintiff contends the ALJ should have done—Plaintiff would still be capable of working as a Routing Clerk, Marker, or Mail Sorter. If the ALJ erred by using the term "occasional" rather than "superficial," any such error would be harmless.

###### C.    The ALJ's Passing Misstatement Regarding Plaintiff's Anxiety Medication Is Immaterial.

Plaintiff's final argument is that the RFC set forth by the ALJ is flawed because, when explaining the reasoning behind his RFC findings, the ALJ wrote that there was "no evidence of medications" for Plaintiff's mental impairments. *See* Docket No. 15-3, at 17–18 (citing R. 38). Plaintiff argues that this statement is "patently incorrect" and points to objective medical

evidence illustrating that Plaintiff has been prescribed various anxiety medications over time. *See id.* (naming buspirone, Zoloft, and Lorazepam as examples).

The Commissioner, for his part, contends that this single misstatement is insignificant. The Commissioner points out that the ALJ's decision makes clear that he understood the medical evidence regarding Plaintiff's medication history. *See* Docket No. 18, at 12–13 ("If [the ALJ's] statement that '[t]here was no evidence of medications' had been all he said on the subject, then Plaintiff's argument might have merit." (second alteration in original)). Quoting the First Circuit's decision in *Knapp v. Secretary of Health & Human Services*, 810 F.2d 315, 316 (1st Cir. 1987), for the proposition that "an ALJ's decision must be read 'as a whole,'" the Commissioner points out that elsewhere in his decision the ALJ explicitly described Plaintiff's medication treatment. Docket No. 18, at 12–13.

Plainly, the statement on which Plaintiff focuses is wrong; the ALJ was mistaken when he stated that "[t]here was no evidence of medications" for Plaintiff's mental impairments. As Plaintiff notes, the record is replete with references to the anxiety medications she was prescribed. *See* Docket No. 15-3, at 17–18 (pointing to numerous medical records referencing Plaintiff's anxiety medication prescriptions).

The question, therefore, is whether the ALJ's error necessitates remand. On the one hand, remand (or reversal) is appropriate when an ALJ ignores evidence. *See Sacilowski*, 959 F.3d at 437 (explaining that an "ALJ's findings of fact . . . are not conclusive when derived by ignoring evidence" (quoting *Nguyen*, 172 F.3d at 35)). On the other hand, mere "mischaracterization or misstatement of the evidence does not necessarily compel remand." *Newman v. Berryhill*, No. 17-cv-455, 2018 WL 2215513, at *4 (D.N.H. May 15, 2018).

To determine whether remand is appropriate, "[c]ourts examine the effect of the [mischaracterization or misstatement] and determine whether the ALJ's decision remains supported by substantial evidence." *Id.*; *see Lefebvre v. U.S. Soc. Sec. Admin.*, No. 18-cv-4, 2019 WL 13225150, at *2 (D.N.H. June 17, 2019) (citing cases in which ALJs "overlooked a few contrary data points while making . . . broad statement[s] about the content of the record" and the reviewing federal courts concluded that, "[w]hile these ALJs were incorrect about the complete absence of certain data, the thrust of their reasoning was still consistent with the overall record"). Where remand "will amount to no more than an empty exercise," it is "not essential." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000); *see Perez Torres v. Sec'y of Health & Hum. Servs.*, 890 F.2d 1251, 1255 (1st Cir. 1989) (per curiam) (affirming the district court's denial of social security disability benefits where the ALJ's "misread[ing] of the record" was deemed harmless).

In this case, it is apparent that the ALJ's single misstatement was a transitory slip of the pen, with no impact on the substance of the ALJ's decision. The ALJ's decision repeatedly describes the anxiety medications Plaintiff was prescribed. *See, e.g.*, R. 38 ("She sees a psychiatrist for medications . . . ."); R. 40 (stating that Plaintiff "started on Prazosin for ongoing [mental health] symptoms"), R. 42 ("She had recently started taking sertraline for anxiety."), R. 45 ("While there were periods when she was not on medication, the claimant tended to treat with prescribed medication . . . ."). Plainly, the ALJ appreciated—and appropriately took into account—that Plaintiff had been prescribed anxiety medication. Contrary to Plaintiff's contention, this is not a case of ignored evidence.

The isolated slip-up cited by Plaintiff does nothing to undermine the decision of the ALJ, and the ALJ's RFC determination remains supported by substantial evidence. Indeed, the ALJ's

findings make clear that the RFC determination was not based on any misapprehension about Plaintiff's medications. In explaining how he determined that "the medical evidence . . . supports fewer limitations than alleged" with respect to Plaintiff's mental impairments, the ALJ expressly noted that Plaintiff's treatment was "limited to counseling and medication management" and that, "[w]hile there were periods when she was not on medication, [Plaintiff] tended to treat with prescribed medication." R. 45.

Given the ALJ's numerous, accurate references to Plaintiff's anxiety medications, and given that the ALJ plainly took Plaintiff's medications into account when determining her RFC, I conclude that the ALJ's isolated misstatement does not warrant remand. *Cf. Newman*, 2018 WL 2215513, at *4 (determining that, although the ALJ incorrectly stated that the claimant did not receive counseling for his mental impairments, remand was unnecessary because "[t]he ALJ based his RFC assessment not on a finding that [the claimant] did not have severe mental impairments, but on the finding that any functional limitations resulting from such impairments were adequately controlled by medication").

CONCLUSION

For the forgoing reasons, the Court DENIES Plaintiff's motion for an order reversing the Commissioner's decision [Docket No. 15] and GRANTS the Commissioner's motion for an order affirming the Commissioner's decision [Docket No. 17].

/s/ Paul G. Levenson
Paul G. Levenson
Dated: March 21, 2025                    U.S. MAGISTRATE JUDGE